IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DUJUAN VINCENT THOMAS,

    Petitioner,

v.

                              Civil Action No. 1:14cv43
                              Criminal Action No. 1:11cr93-1
                              (Judge Keeley)

UNITED STATES OF AMERICA,

    Respondent.

## REPORT AND RECOMMENDATION

### I. Introduction

On March 12, 2014, the *pro se* petitioner, an inmate incarcerated at FCI Gilmer in Glenville, West Virginia, filed a Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Dkt.# 147). On March 18, 2014, the Government was directed to respond (Dkt.# 149). The Government filed its response on April 17, 2014. (Dkt.# 151). On June 2, 2014, petitioner filed a traverse. (Dkt.# 155).

On November 4, 2014, the petitioner filed a pro se Motion to Reduce Sentence. (Dkt.# 158). As of the date of this Report and Recommendation, that motion is still pending.

### II. Facts

**A. Conviction and Sentence**

On January 13, 2012, petitioner signed a plea agreement by which he agreed to plead guilty to Count Seven of the indictment, aiding and abetting in distribution of cocaine base, also known as "crack," in violation of Title 21, United States Code, §§841(a)(1), 841(b)(1)(C) and U.S.C. §2. In the agreement, petitioner waived his right to appeal and to collaterally attack his

sentence. Specifically, the petitioner's plea agreement contained the following language regarding his waiver:

> 11. Mr. Thomas is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, the defendant knowingly waives the right to appeal any sentence with a base offense level of twenty-eight (28) or lower under the U.S.S.G. (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742, in exchange for the concessions made by the United States in this plea agreement. The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255. The parties have the right during any appeal to argue in support of the sentence.

Dkt.# 55 at 3 – 4.

On January 13, 2012, petitioner and his co-defendants appeared in open court for their plea hearings. (Dkt.# 119). Petitioner testified that he was 26 years old, had attended school until the 11th grade, and was then-currently working on earning a GED. (Id. at 7). He testified that he could read, write and understand the English language. (Id.). He denied any physical or mental disability that might affect his ability to fully participate in the proceedings. Id. at 8. He denied taking any prescription medications and denied any recent use of alcohol or drugs within the past twenty-four hours. (Id.). He testified that he understood and agreed with all the terms and conditions of the plea agreement, and had had an opportunity to read, fully discuss with counsel, and understand it before signing it. (Id. at 26 - 27). The Court specifically asked petitioner if he understood that under the terms of the waiver of his appellate and post-conviction relief rights, he only retained those rights if the sentence he ultimately received was based on a base offense level of 28 or lower and petitioner said that he did. (Id. at 38 – 39 and 53 - 54). The Court then reviewed all the rights petitioner was giving up by pleading guilty. (Id. at 49 - 52). During the plea hearing, the Government presented the testimony of Detective David Helms of the Morgantown Police Department, then-currently assigned to the DEA through the Mon

Valley Drug Task Force, to establish a factual basis for the plea. (Id. at 55 - 61). The petitioner did not contest the factual basis of the plea. (Id. at 61).

After the Government presented the factual basis of the plea, the petitioner advised the Court that he was guilty of Count 7 of the indictment. (Id. at 64). The petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (Id. at 65). In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. (Id. at 25 and 65). The petitioner testified that his attorney had adequately represented him, and that his attorney had left nothing undone. (Id. at 65 - 66). Finally, petitioner said he was in fact guilty of the crime to which he was pleading guilty. (Id. at 64 - 65).

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily, that there was a factual basis for the plea, and that the petitioner understood the nature of the charge and the consequences of pleading guilty. (Id. at 71 – 72). The petitioner did not object to the Court's finding.

On July 3, 2012, the petitioner appeared before the Court for sentencing. (Dkt.# 120). After considering several factors, including the circumstances of the crime, petitioner's extensive criminal history, the likelihood of recidivism, and the sentencing objectives of punishment, the Court sentenced the petitioner to a term of 151 months imprisonment, the bottom of the recommended Guideline range, followed by three years supervised release. (Id. at 21 – 22). The Court recommended that petitioner participate in the Bureau of Prison's ("BOP") substance abuse treatment program and any other available educational or vocational opportunities. (Id.). The Court noted that because petitioner's base offense level was found to be 28, he did not retain his appellate and collateral attack rights. (Id. at 23 - 24).

B. **Direct Appeal**

On July 12, 2012, petitioner filed a notice of appeal.

On appeal, counsel for petitioner filed an Anders[1] brief, raising the following issues:

1) whether the District Court complied with Fed. R. Crim. P. 11 when it accepted petitioner's plea, and

2) whether the sentence imposed was reasonable.

Petitioner also filed a *pro se* supplemental brief, alleging that

3) counsel was ineffective for stipulating in the plea agreement that petitioner was a career offender and in failing to object to the PreSentence Investigation Report's ("PSR") career offender designation; and

4) counsel's failure in this regard rendered his plea involuntary.

On February 28, 2013, the judgment of the District Court was affirmed by the Fourth Circuit in an unpublished *per curiam* opinion. (Dkt.# 132). Petitioner did not move for rehearing or petition for a writ of *certiorari* with the United States Supreme Court.

C. **Federal Habeas Corpus**

**Petitioner's Contentions**

In his federal habeas petition, filed without a memorandum in support, the Petitioner raises two grounds of ineffective assistance of counsel, alleging that counsel

1) failed to challenge petitioner's prior convictions resulting in sentencing enhancements; and

2) failed to challenge the aiding and abetting statute.

Although petitioner requests no specific relief, the undersigned presumes he assumes that petitioner is seeking to have his criminal conviction vacated.

**Government's Response**

---

[1] Anders v. California, 386 U.S. 738 (1967).

The Government contends that Petitioner's motion to vacate should be denied in full without an evidentiary hearing, because Ground One claim was already raised on appeal and cannot be relitigated in a §2255 motion and Petitioner's Ground Two claim is procedurally defaulted, because it should have been raised on direct appeal.

**Petitioner's Traverse**

In his traverse, Petitioner reiterates the claims previously made in his §2255 motion and attempts to refute the Government's arguments on the same. He asks to be resentenced "as to the violation in which caused [sic] a wrongful conviction." (Dkt.# 155 at 1).

### III. Analysis

A. **Petitioner's Burden of Proof**

A petitioner collaterally attacking his sentence or conviction bears the burden of proving his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. §2255. A motion collaterally attacking a petitioner's sentence brought pursuant to §2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D. Va. Jan. 4, 2006).

B. **Waiver**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To

this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to

distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If

7

the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a §2255 case from those raised on direct appeal. In Braxton v. United States, 358 F. Supp. 2d 497 (W.D. Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v. Cannady, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F. Supp. 2d 489, 493 (E.D. Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a §2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in Attar applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of §2255

waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' United States v. White, 307 F.3d 336, 344 (5th Cir. 2002).

Braxton, 358 F. Supp. 2d at 503.

The Court in Braxton further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v. Broughton-Jones, 71 F.3d 1143,1147 (4th Cir. 1995) also supports such a distinction. Braxton, 358 F. Supp. 2d at 503, n. 2. Finally, the Braxton Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the §2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

The unpublished *per curiam* decision in United States v. Morris, 247 Fed. Appx. 459; 2007 U.S. App. LEXIS 21976 (4th Cir. 2007) indicates that when the District Court conducts a thorough Rule 11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below the statutory maximum, the record established that defendant made a knowing and voluntary waiver of rights. Similarly here, during the Rule 11 colloquy, the Court specifically inquired whether petitioner understood the waiver of his appellate and post-conviction habeas corpus relief rights contained in the plea agreement and petitioner said that he did. (Dkt.# 119 at 38 – 39 and 53 - 54). Further, petitioner specifically testified that he understood that, incident to his plea agreement, in exchange for some of the Government's concessions, he was waiving his right to appeal his sentence or to collaterally attack the legality

9

of the guilty plea and sentence, as long as it was within the maximum sentence of not more than twenty years and it was based on a base level determination of 28 or lower. (Id. at 30 and 53 - 54). Because petitioner was ultimately determined to be a career offender with a base offense level of 28, he received a sentence of 151 months' imprisonment. The undersigned finds that the only reasonable conclusion from this inquiry is that petitioner knowingly and voluntarily waived the right to collaterally attack his conviction and sentence by filing this §2255 motion, except for claims of ineffective assistance of counsel arising after the entry of the guilty plea. Thus, a review of petitioner's Ground Two claim that counsel was ineffective for failing to challenge the aiding and abetting statute is precluded.

However, a waiver analysis may not be dispositive of all of the issues in this petition. To the extent that petitioner has also raised an ineffective assistance of counsel claim arising after the entry of the plea, his Ground One claim that counsel was ineffective for failing to challenge his prior convictions, that claim is excepted from his waiver and will be given review.

**C. Procedural Default**

Before evaluating the merits of petitioner's remaining claim, this Court must first determine whether petitioner's claim may be brought in a §2255 motion or whether he has "procedurally defaulted" on it by failing to raise them in direct appeal. It is well settled that non-constitutional issues that could have been raised on direct appeal but were not may not be raised in a collateral attack such as a §2255 motion. Sunal v. Large, 332 U.S. 174, 178-79 (1947); Bousley v. United States, 523 U.S. 614 (1998). This is because "a final judgment commands respect" such that "a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982). Examples of such "procedurally defaulted" issues include, generally, errors of law committed by the trial court and, specifically, "the existence of evidence

to support any conviction, irregularities in the grand jury procedure, departure from a statutory grant of time in which to prepare for trial, and other errors in trial procedure which do not cross jurisdictional lines." Sunal, 332 U.S. at 179.

In contrast to nonconstitutional issues, constitutional issues that were capable of being raised on direct appeal but were not may nevertheless be raised in a §2255 motion so long as the petitioner demonstrates 1) "cause" that excuses his procedural default, and 2) "actual prejudice" resulting from the alleged errors. United States v. Maybeck, 23 F.3d 888, 891 (1994). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 492-493 (4th Cir. 1999), cert. denied, 529 U.S. 1010 (2000). Actual prejudice is then shown by demonstrating that the error worked to petitioner's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986).

Despite the government's contention that petitioner's Ground One claim of ineffectiveness of counsel for failing to challenge petitioner's prior convictions is procedurally barred because it was already raised on appeal, a claim alleging ineffective assistance of counsel may be raised in a §2255 motion, regardless of whether the issue was raised on direct appeal and regardless of a showing of "cause" and "prejudice." See United States v. Richardson, 195 F.3d 192 (4th Cir. 1999), cert. denied, 528 U.S. 1096 (2000); White v. United States, 2006 U.S. Dist. LEXIS 45122, at *7-8 (S.D. W.Va. June 20, 2006).

**D. Ineffective Assistance of Counsel**

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief

11

on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland, 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

As noted above, as his only remaining claim for relief, the petitioner asserts that counsel was ineffective after the entry of the guilty plea for failing to challenge his prior convictions, presumably before or at sentencing. Petitioner's entire argument in his §2255 motion on the point is that his "prior never reached the grounds for enhancement purpose under the Federal

Statute Guidlines [sic]."[2] In his traverse, he elaborates somewhat more, arguing that because his prior convictions "never caused for him to be sentenced over a one year period of jail, none of his priors can count for the 'career offender' statute."[3] Petitioner admits having a

> 2003 and a 2004 conviction from Detroit, MI, that has multiple charges in the same statutory offense. Had done his investigation into petitioner [sic] priors he could of [sic] seen that Mr. Thomas could not of a [sic] 'Career Offender.' . . . In 2003, petitioner was charged with "Possession with Intent to Deliver Cocaine, Heroin, and Marijuana." These are three <u>Different</u> charges and crimes. But, placed in the same categorical [sic] under Michigan Law. He was sentenced to 5 months which was suspended and credited for 12 days time served. At no time did his crime exceed the one year and a day statute.

Dkt.# 155 at 5.

Under the Sentencing Guidelines,

> [a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. §4B1.1(a). A "controlled substance offense"

> means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. §4B1.2(b). Furthermore, "prior felony conviction"

> means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, **regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed.**

U.S.S.G. §4B1.2 cmt. 1 (emphasis added).

---

[2] Dkt.# 147 at 5.

[3] Dkt.# 155 at 4.

On or about November 18, 2002, in Case No. 03-2659 in the Third Judicial Circuit Court, Detroit, Michigan, petitioner was charged with Possession with Intent to Deliver Marijuana, in violation of Mich. Compiled Laws Service ("MCLS") §333.7401(2)(d)(iii), a crime with a maximum penalty of four years' imprisonment, after a search of his person recovered 24 baggies from marijuana and $163.00. Petitioner pled guilty on February 26, 2003, and on March 12, 2003, was sentenced to serve a one-year term of probation.[4]

On or about February 11, 2003, in Case No. 03-2728 in the Third Judicial Circuit Court, Detroit, Michigan, petitioner was charged with Possession with Intent to Deliver Cocaine, less than 50 grams, in violation of MCLS §333.7401(2)(a)(iv), a crime with a maximum penalty of 20 years' imprisonment, after a search of his person recovered 13 small baggies of cocaine (4.3 grams) and $280. Petitioner pled guilty on March 19, 2003 and on April 15, 2003, was sentenced to a 5 year term of probation. However, at a March 31, 2004 revocation hearing, he was sentenced to serve 90 – 120 days in an alternative-to-prison boot camp program, with the balance of his probation to follow. At a September 6, 2005 revocation hearing, his probation was revoked and he was sentenced to serve 60 days imprisonment with credit for 60 days' time served.[5]

On or about August 12, 2003, in Case No. 03-9528 [sic][6] in the Third Judicial Circuit Court, Detroit, Michigan, petitioner was charged with 3 Counts; Possession with Intent to Deliver Cocaine, Possession with Intent to Deliver Heroin, and Possession with Intent to Deliver

---

[4] Dkt.# 113, ¶79 at 17.

[5] Dkt.# 113, ¶80 at 18.

[6] Per the probation officer who prepared the PSR, although this case number was taken from the original Michigan state charging document and repeated in the PSR, it is apparently a typographical error; the actual case number is 03-9568; this was confirmed by the *pro se* law clerk ("PSLC") by a search of petitioner's online Third Judicial Circuit of Michigan criminal records found at <https://cmspublic.3rdcc.org/default.aspx>.

Marijuana, in violation of MCLS §§333.7401(2)(a)(iv), 333.7401(2)(d)(iii), and 750.92,[7] crimes with maximum penalties of 20, 20 and 4 years imprisonment, respectively, after being observed selling narcotics and a search of his person recovered 18 baggies of cocaine, 8 baggies of marijuana, and 5 packs of heroin. On August 28, 2003, petitioner pled guilty to Count 4, attempted delivery of less than 50 grams of cocaine, and on March 9, 2004, was sentenced to serve a 5 month term of imprisonment, but imposition of the sentence was suspended.[8]

On or about February 16, 2004, in Case No. 04-2206 in the Third Judicial Circuit Court, Detroit, Michigan, petitioner was charged with Possession with Intent to Deliver Cocaine and Possession with Intent to Deliver Marijuana, in violation of MCLS §§333.7401(2)(a)(iv), 333.7401(2)(d)(iii), crimes with a maximum penalty of 20 and 4 years' imprisonment, respectively, after being observed selling narcotics and a search of his person recovered an unspecified quantity of cocaine, marijuana and heroin.[9] On February 24, 2004, petitioner pled guilty to Count One, delivery/manufacture of less than 50 grams of cocaine, and on March 9, 2004, was committed to an alternative-to-imprisonment boot camp program for 90 – 120 days, followed by an 18-month term of probation. He was released from boot camp on June 9, 2004,

---

[7] Attempts to commit crimes are governed by MCLS §750.92. Subsection (3) of that statute states that statutory maximums are cut in half where an offense is an attempt.

[8] Dkt.# 113, ¶81 at 19.

[9] This information was obtained from ¶82 of petitioner's PSR, which confusingly states petitioner was charged with possession with intent to deliver (only) heroin and marijuana, after being apprehended and by law enforcement, who recovered "an unspecified quantity of *cocaine,* marijuana, and heroin." (emphasis added). This not only is internally contradictory, it also conflicts with the probation officer's August 3, 2015 statement by phone to the PSLC indicating that petitioner was also charged with violating MCLS §750.92, attempted possession with intent to deliver, in connection with these crimes, and conflicts with the Third Judicial Circuit of Michigan's online criminal records, which indicate petitioner was charged with only possession/intent to deliver cocaine and marijuana (and not heroin), violations of MCLS §§333.7401(2)(a)(iv), 333.7401(2)(d)(iii); further, the Third Judicial Circuit of Michigan's online records make no mention of any charge of attempt under MCLS §750.92.

but at an August 8, 2005 revocation hearing, his probation was revoked and he was sentenced to serve 45 days imprisonment.[10]

As to the application of career offender status, the Probation Officer who prepared Petitioner's Presentence Report stated:

> As shown in Part B [Criminal History] of this report, Mr. Thomas has four prior felony drug trafficking convictions, specifically, the offenses addressed in Paragraphs 79, 80, 81, and 82. Moreover, the two convictions addressed in Paragraphs 81 and 82 are counted separately under the provisions of §4A1.1. Since the instant offense is a felony drug trafficking conviction, as that term is defined in §4B1.2(b), and Mr. Thomas was age 18 or older at the time of its commission, Mr. Thomas is a career offender, as that term is defined in §4B1.1(a). Since the statutory maximum penalty for the instant offense is 20 years imprisonment, the offense level from the Career Offender Table is 32, pursuant to §4B1.1(b)(3).

(Dkt.# 113, ¶59 at 14).

The Fourth Circuit has noted that the actual sentence that the defendant received is irrelevant; rather, the inquiry must focus on the maximum possible sentence that the defendant could have received. See United States v. Kerr, 737 F.3d 33, 39 (4th Cir. 2013). For his violations of the various subsections of MCLS §333.7401, petitioner faced, at the very minimum,[11] maximum penalties of "imprisonment for not more than 4 years or a fine of not more than $20,000, or both," or maximum penalties of two years imprisonment for an attempted crime under MCLS 333.740(2)(d)(iii), pursuant to the application of MCLS §750.92. Accordingly, it is clear that petitioner pled guilty to 4 felony drug trafficking charges that each exposed him to the possibility of imprisonment exceeding one (1) year. The Eastern District of Michigan recently noted that convictions under MCLS §333.7401, such as petitioner's, falls

---

[10] Dkt.# 113, ¶82 at 20.

[11] Petitioner's criminal history, as stated in his PSR, does not specifically state the amounts of drugs involved in grams; the specific subsections of MCLS §333.7401 he repeatedly violated, or their relative potential maximum penalties; the PSLC contacted the probation officer who prepared his PSR, to obtain the information, which was further confirmed by accessing petitioner's criminal case records online at the Third Judicial Circuit of Michigan at < https://cmspublic.3rdcc.org/default.aspx>.

within the meaning of U.S.S.G. §4B1.2. United States v. Purifoy, 2014 U.S. Dist. LEXIS 59347 *11 - 12 (E.D. Mich. April 3, 2014), *report and recommendation adopted by* United States v. Purifoy, 2014 U.S. Dist. LEXIS 58392 (E.D. Mich. April 28, 2014); see also United States v. Solomon, No. 13-2258, F. App'x , 2014 WL 5904933, at *2 (6th Cir. Nov. 14, 2014)(noting that a conviction under §333.7401(2)(d)(iii) qualified under §4B1.2 when statutory maximum was cut in half, to two years, for attempt charge). Given this, the undersigned cannot find that counsel was deficient in failing to object to use of Petitioner's four prior felony controlled substance offenses to classify him as a career offender for purposes of sentencing. See Strickland, 466 U.S. at 687. Accordingly, petitioner's claim is without merit, and he is not entitled to the relief he seeks.

## IV. Recommendation

For the reasons stated above, the undersigned recommends that the petitioner's §2255 motion (Dkt.# 147) be **DENIED** and **DISMISSED** with prejudice from the docket.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, **or by August 24, 2015**, any party may file with the Clerk of Court written objections identifying those portions of the report and recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this report and recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation**. 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S.1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address on the docket sheet, and electronically to all counsel of record, as applicable.

DATED: August 10, 2015

<u>James E. Seibert</u>  
JAMES E. SEIBERT  
UNITED STATES MAGISTRATE JUDGE